OPINION
{¶ 1} Plaintiff-appellant Amber A. Peoples appeals a judgment of the Court of Common Pleas, Domestic Relations Division, of Stark County, Ohio, which granted a divorce to her and defendant-appellee Bruce Peoples, divided the parties' property, allocated the debts, and approved a joint parenting plan for the parties' minor child. Appellant assigns five errors to the trial court:
 {¶ 2} "I. THE TRIAL COURT ABUSED ITS DISCRETION BY ADOPTING THE SHARED PARENTING PLAN SUBMITTED BY FATHER.
 {¶ 3} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO ORDER FATHER TO PAY CHILD SUPPORT AND IN COMPUTING FATHER'S GROSS INCOME FOR CHILD SUPPORT PURPOSES.
 {¶ 4} "III. THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THE DURATION OF THE MARRIAGE WAS FROM THE DATE OF THE CEREMONIAL MARRIAGE TO THE FIRST DAY OF TRIAL.
 {¶ 5} "IV. THE TRIAL COURT ERRED AS A MATTER OF LAW IN AWARDING SEPARATE PROPERTY TO HUSBAND WHEN HUSBAND FAILED TO TRACE HIS SEPARATE PROPERTY.
 {¶ 6} "V. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO AWARD WIFE SPOUSAL SUPPORT."
 {¶ 7} The record indicates the parties began living together in 1992, and were married in May of 2001. Appellee was 48 years old and self-employed, selling classic cars and parts at swap meets and over the Internet. He began buying cars and parts in the 1980's, and formed a business known as BAP Enterprises in 1991 or 1992. He works out of his home and has his inventory stored in the basement, garage and large outbuilding at the home, and at another property he owns. Appellee is also a musician who has played in bands and taught music. Appellee admitted he did not work in his business during the year 2004 and the first part of 2005 because he was under stress because of the divorce and wanted to spend more time with his daughter. Appellee lived off his savings and investments during this time.
 {¶ 8} Appellant was 37 years old at the time of the hearing. She dropped out of high school in her senior year to work with her mother selling nail care products and to start her own business designing, making, and selling hat pins. She continued her hat pin business, Popinjay Accessories, until 2000, when she became pregnant with the parties' daughter. After their daughter was born, she sold items at a flea market one to two days per week. The court found since the parties separated in January 2004, appellant has not applied for any employment in Ohio, and has not attempted to obtain her GED.
 {¶ 9} The trial court found appellee's four year average annual income from his self-employment and interest was $11,075.00 while a three-year average, excluding the year appellee did not work, was $14,400.00. Appellant's income was $409.00 net in 2001, and thereafter, she had no income other than her temporary spousal support. The court found either the parties' businesses were just hobbies, or their income was drastically understated.
 {¶ 10} Appellee settled a personal injury lawsuit in 1999, and the parties used savings and interest income from the settlement to supplement their income. The court found both parties were voluntarily underemployed and imputed $10,712.00 income to appellant, and $14,981.71 to appellee, including $5,000.00 gross sales of his outstanding inventory minus ordinary expenses and taxes. The trial court found appellee's child support obligation was 58.31% of the worksheet amount for one child, and appellant's was 41.69%. The court gave appellee no credit for the health insurance of the child because he did not present evidence of the additional cost of insuring her. The court found the amount of child support was unjust, inappropriate, and not in the best interest of the child. The court deviated from the worksheet amount because of the shared parenting plan, the equal allocation of time between the parents, and because appellee was required to pay the child's medical bills and to provide health insurance for her. The trial court concluded neither party should pay child support.
 {¶ 11} The trial court held the duration of the marriage was from the formal ceremonial date of the marriage through the first day of trial, and used those dates to determine the separate and marital property of the parties. The court found appellee owned the marital residence prior to the marriage, but the property had increased during the marriage. The court found the increase in value was a marital asset. The court found all the banks accounts, investments, and CD's were pre-marital assets of appellee, traceable to the personal injury settlement appellee received prior to the marriage.
 {¶ 12} The court found each party's business was separate property, established before the parties were married. The court found appellee's business had decreased in value during the marriage, and all the debts were his separate obligation. The trial court adopted appellee's proposed joint parenting plan, and found neither party should pay spousal support to the other.
 {¶ 13} Our standard of reviewing decisions of a domestic relations court is generally the abuse of discretion standard, see Booth v. Booth (1989), 44 Ohio St. 3d 142. The Supreme Court made the abuse of discretion standard applicable to alimony orders in Blakemore v. Blakemore (1983), 5 Ohio St. 3d 217; to property divisions in Martin v. Martin (1985),18 Ohio St. 3d 292; and to custody proceedings in Miller v. Miller (1988),37 Ohio St. 3d 71. The Supreme Court has repeatedly held the term abuse of discretion implies the court's attitude is unreasonable, arbitrary or unconscionable, Blakemore, supra, at 219.
 I {¶ 14} In her first assignment of error, appellant argues the court erred in adopting appellee's proposed shared parenting plan. Appellant argues both parties submitted proposed joint parenting plans to the magistrate to whom this matter was referred, and the magistrate rejected both as not being in the best interest of the child. Appellant argues the magistrate informed the parties what she considered appropriate for their joint parenting plan, and requested the parties submit amended proposed plans. Both parties did so. Appellee's proposed parenting plan addressed the magistrate's concerns, and appellant argues in effect, the magistrate dictated the terms of the shared parenting plan, which is contrary to law, McClain v. McClain
(1993), 87 Ohio App. 3d 856. Appellant concedes a trial court may make suggestions for modifying a submitted shared parenting plan, Id.
 {¶ 15} Appellee argues appellant did not object when the magistrate discussed how her concerns about the joint parenting plan could be resolved, and appellant submitted her own modified shared parenting plan.
 {¶ 16} R.C. 3109.04 sets forth the factors a trial court should consider in determining the best interest of a child regarding the allocation of parental rights and responsibilities. Those factors are:
 {¶ 17} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 18} (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 19} (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 20} (d) The child's adjustment to the child's home, school, and community;
 {¶ 21} (e) The mental and physical health of all persons involved in the situation;
 {¶ 22} (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 23} (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 24} (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 25} (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 26} (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 27} The trial court made specific findings regarding the factors, and the findings are supported by evidence in the record.
 {¶ 28} The trial court cited R.C. 3109.04 (F)(2) as setting forth the various factors a trial court should consider in adopting a proposed parenting plan. Those factors are:
 {¶ 29} "(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
 {¶ 30} (b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 {¶ 31} (c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
 {¶ 32} (d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
 {¶ 33} (e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem."
 {¶ 34} The trial court made findings regarding each of the factors, but did not follow the guardian ad litem's recommendations. The record contains evidence supporting the court's findings.
 {¶ 35} We find the trial court did not abuse its discretion in adopting appellee's proposed shared parenting plan. The first assignment of error is overruled.
 II {¶ 36} In her second assignment of error, appellant argues the trial court abused its discretion in not ordering appellee to pay child support. The trial court found the parties' shared parenting plan gave each parent approximately equal time with the child. The court also found appellee provided medical insurance and was ordered to pay the child's medical expenses. R.C. 3119.24
permits the court to deviate from a standard child-support order for these reasons.
 {¶ 37} We have reviewed the record, and we find the trial court did not err in determining neither party should pay child support to the other. The second assignment of error is overruled.
 III {¶ 38} In her third assignment of error, appellant argues the court abused its discretion in determining the length of the marriage was from the date of ceremonial marriage to the first day of trial.
 {¶ 39} R.C. 3105.171 requires the court to determine the length of the marriage, and provides the length of the marriage is generally from the date of the marriage through the date of final hearing. If the court determines the use of either or both dates would be inequitable, then the court may select dates it considers equitable in determining the length of the marriage and the marital property.
 {¶ 40} The parties presented conflicting testimony regarding the duration of the marriage. Appellant argued the parties had become engaged to be married around the time the parties began living together, and the court should have found the marriage relationship began then. Appellee denied her allegations and testified they married because appellant became pregnant.
 {¶ 41} The trial court found the parties had always kept all their personal bank accounts separate and there was no pooling of financial resources. The parties owned no real estate jointly, and the marital residence had been purchased out of the proceeds of his personal injury award, prior to the marriage. The court found the parties kept their business accounts separate and neither had made any significant contribution to the other's business. The court found prior to the marriage the parties did not hold themselves out to family, friends or acquaintances as husband and wife.
 {¶ 42} We find the trial court did not err in determining it would be equitable to use the date of the ceremonial marriage as the first day of the marriage.
 {¶ 43} The trial court also found it equitable to use the first day of the trial, rather than the last day, as the ending date of the marriage. The record indicates the trial lasted six days, spanning more than six months. The record does not demonstrate either party was prejudiced by using as the final date of the marriage the first day of trial, rather than the last.
 {¶ 44} The third assignment of error is overruled.
 IV {¶ 45} In her fourth assignment of error, appellant argues the trial court erred in determining some property was appellee's separate property, because he could not trace the funds back to his personal injury insurance settlement. The record does not support appellant's arguments. We find the trial court did not err in determining some of the property was appellee's separate property, because it was acquired before the marriage and/or with funds he received before the marriage.
 {¶ 46} The fourth assignment of error is overruled.
 V {¶ 47} In her fifth assignment of error, appellant argues the trial court abused its discretion in not awarding her spousal support, and in not imputing a higher income to appellee. Appellee replies during the pendency of the divorce he paid twenty one months of temporary spousal support for a marriage of forty three months.
 {¶ 48} R.C. 3105.18 sets forth the factors the trial court should consider in making the determination whether spousal support is appropriate, and in what amount:
 {¶ 49} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 50} b) The relative earning abilities of the parties;
 {¶ 51} (c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 52} (d)The retirement benefits of the parties;
 {¶ 53} (e) The duration of the marriage;
 {¶ 54} (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 55} (g) The standard of living of the parties established during the marriage;
 {¶ 56} (h) The relative extent of education of the parties;
 {¶ 57} (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 58} (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 59} (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 60} (l) The tax consequences, for each party, of an award of spousal support;
 {¶ 61} (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 62} (n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 63} The trial court made findings regarding the various factors, and the findings are supported by the record. We find the trial court did not abuse its discretion in determining neither party should pay spousal support to the other.
 {¶ 64} The fifth assignment of error is overruled.
 {¶ 65} For the foregoing reasons, the judgment of the Court of Common Pleas, Domestic Relations Division, of Stark County, Ohio, is affirmed.
Gwin, J., Wise, P.J., and Boggins, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, of Stark County, Ohio, is affirmed. Costs to appellant.